# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BRUCE D. JOHNSON-EL, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CAUSE NO.: 3:15-CV-210-TLS |
| | ) |
| SUPERINTENDENT, | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

Bruce D. Johnson-El, a *pro se* prisoner, filed a Petition for Writ of Habeas Corpus [ECF No. 1] attempting to challenge his conviction and 20-year sentence for rape in Cass Superior Court on March 23, 2006. The Respondent argues that the Habeas Corpus Petition must be dismissed because it is untimely, the claims are procedurally defaulted, and they are without merit. Johnson-El has not filed any reply.

## BACKGROUND

In deciding the Petition, the Court must presume that the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Johnson-El's burden to rebut this presumption with clear and convincing evidence. *Id*. On direct appeal, the Indiana Court of Appeals set forth the facts underlying this case as follows:

> On the night of April 16, 2003, Johnson-El visited the home of Pamela Putnam in Logansport. Johnson-El had known Putnam since childhood and regularly visited Putnam at her home. Putnam's children, eighteen-year-old A.P. and twenty-one-year-old Shaun, also lived at the residence. When Johnson-El arrived at Putnam's home, Putnam was in her bedroom and A.P. was watching television in the living room. Johnson-El sat next to A.P. on the couch and A.P. noticed that Johnson-El smelled of alcohol and that his speech was slurred. Shaun arrived home a short time later, and Johnson-El and Shaun decided to walk to Johnson-El's home to obtain alcohol, approximately three blocks away. After they left, A.P. went to her

bedroom to sleep. Johnson-El and Shaun returned to Putnam's home with a few beers and a bottle of whiskey, consumed some of the alcohol, and fell asleep watching television.

During the night, A.P. awoke to discover Johnson-El sitting on the edge of her bed. A.P. asked Johnson-El why he was in her room and then told him to leave. Johnson-El left A.P.'s bedroom, closing the door behind him. A.P. fell asleep but was subsequently awakened by a man she recognized as Johnson-El lying behind her and applying pressure to her neck and hips. A.P. realized that the shorts she was wearing had been pulled down and that Johnson-El was touching her neck, lower back, and vagina while holding her wrists together in front of her. A.P. felt Johnson-El put his penis into her vagina and move slowly. A.P. began to struggle, freed her left arm, pushed Johnson-El, and told him "no" and "to stop." Tr. p. 25. Johnson-El began to move faster as A.P. struggled. Johnson-El eventually stopped, stood up, told A.P. not to tell anyone, and left her bedroom.

The next morning, Putnam found Johnson-El on the couch and he told her that he had done "something that he was ashamed of . . . ." *Id.* at 60. A.P. remained in her bedroom until Putnam and Johnson-El left the house. A.P. answered the phone when it rang and Johnson-El asked her "if [she] was okay" and reiterated that this was "between me and you." *Id.* at 28. A.P. hung up the phone, called Putnam at work, and asked that she come home.

When Putnam returned home, A.P. told her mother that Johnson-El had raped her. While Putnam was talking with A.P., Johnson-El called the house again. Putnam answered the phone and told Johnson-El that she knew what he had done and that she was going to call the police and take A.P. to the hospital. After she hung up the phone, Putnam called the police and brought A.P. to the emergency room in a Logansport hospital. At the hospital, a nurse performed a sexual assault examination on A.P. A.P. complained of a sore vaginal area and lower back pain. The nurse noticed an abrasion on A.P.'s neck.

On April 23, 2003, the State charged Johnson-El with class B felony rape. On June 4, 2004, the State filed an additional count of class B felony rape. A bench trial was held on March 23, 2006, and Johnson-El moved for a directed verdict after the State presented its evidence. The trial court granted Johnson-El's motion as to Count II but denied the motion as to Count I. After the remainder of the bench trial, the trial court found Johnson-El guilty of rape. Following sentencing hearings on April 17, 2006, and May 1, 2006, the trial court sentenced Johnson-El to twenty years imprisonment.

*Johnson-El v. State*, No. 09A02-0605-CR-424, slip op. at *2–4 (Ind. Ct. App. Jan. 10, 2007).

On direct appeal, Johnson-El challenged the sentence. [ECF No. 11-4.] The Indiana Court of Appeals affirmed his sentence on January 10, 2007, and Johnson-El did not seek transfer to the Indiana Supreme Court. [ECF Nos. 11-3, 11-7.]

Johnson-El filed a Petition for post-conviction relief and a Motion for a change of judge on January 28, 2009:

> In his petition, Johnson-El argued that the assistance of his trial and appellate counsel had been ineffective and that the trial court had improperly enhanced his sentence. In his motion for a change of judge, he requested a new judge based on his belief that the judge who had presided over his trial was biased against him. Specifically, he claimed that the trial judge's actions at trial "consisted of voice inflections, facial expressions, and glances, and making reference to this case as a file # 13 case." Based on this "demeanor throughout trial," Johnson-El argued that his trial judge was partial to the State and could not make an objective assessment of the arguments he raised in his petition for post-conviction relief. In response to Johnson-El's petition and motion, on February 3, 2009, the State filed an answer in which it requested disposition without a hearing because Johnson-El's arguments did not contain genuine issues of material fact. That same day, the post-conviction court denied Johnson-El's change of judge motion without a hearing.
>
> Subsequently, on February 17, 2011, Johnson-El, *pro se,* filed an amended petition for post-conviction relief and a second motion for change of judge. In his amended petition, Johnson-El alleged that he was entitled to a new trial based on newly discovered evidence that the victim of his rape had allegedly admitted to her cousin that Johnson-El had not raped her. In his second motion for a change of judge, Johnson-El again argued that his trial judge was prejudiced against him. He stated that:
>
>> I believe the [trial judge] has a personal bias or prejudice against me because my conviction rests upon the sole credibility and testimony of the alleged victim in this case; [a]nd over my own credibility and testimony, he favored a conviction, via, marrying the alleged victim's testimony; and thus, has evinced in this case a bias against me so strong as to affect his objectivity in assessing the charges and claims now made pending before the court in my instant [a]mended [p]etition for [p]ost-[c]onviction [r]elief that would warrant his disqualification from considering this matter. Further, it is my firm belief that the maxium [sic] sentence of [twenty (20)] years he has given me convinces me that he holds such a bias against me.

> Also on February 17, 2011, the post-conviction court denied Johnson-El's second motion for a change of judge, finding that it did not comply with Indiana Post-Conviction Rule 1(4)(b).
>
> On March 19, 2013, the post-conviction court held a hearing and dismissed Johnson-El's amended petition for post-conviction relief pursuant to Indiana Trial Rule 41(E). On April 8, 2013, Johnson-El filed a motion to correct error disputing both the post-conviction court's denial of his motion for a change of judge and his petition for post-conviction relief. The post-conviction court held a hearing on the motion to correct error on July 1, 2013, and denied the motion that same day.

*Johnson-El v. State*, No. 09A02-1302-PC-270, slip op. at *2–4 (Ind. Ct. App. Aug. 24, 2014) (internal citations and footnotes omitted).

On appeal from the denial of post-conviction relief, Johnson-El argued that the post-conviction court improperly denied his Motion for a change of judge and that the dismissal of his post-conviction Petition on procedural grounds under Trial Rule 41(E) was improper. The Indiana Court of Appeals affirmed the post-conviction court's rulings. [ECF No. 11-10.] Johnson-El reiterated his claims on transfer, but the Indiana Supreme Court denied transfer on October 23, 2014. On March 16, 2015, Johnson-El filed his Petition for Writ of Habeas Corpus here, which was signed on March 10, 2015.

**ANALYSIS**

This Petition must be dismissed for a number of reasons. The Respondent argues that Johnson-El's Petition should be dismissed because it is untimely, the claims are procedurally defaulted, and the claims are without merit. Each of these issues will be addressed in turn.

First, however, the Court must address one additional issue *sua sponte*. It has come to the Court's attention that after this case was filed and while it was pending, Johnson-El filed another Writ of Habeas Corpus in *Johnson-El v. Superintendent*, 1:16-CV-3417 (S.D. Ind. filed Dec. 19, 2016), raising the same issues he raises here. Shortly after that Petition was filed in the Southern

4

District of Indiana, Judge Larry L. McKinney dismissed it on the merits. (*Id.*, ECF Nos. 3, 4.) Notably, district courts lack jurisdiction to hear unauthorized "second or successive" habeas corpus petitions. *Burton v. Stewart*, 549 U.S. 147, 157 (2007). However, Congress did not define the phrase "second or successive." *Magwood v. Patterson*, 561 U.S. 320, 332 (2010). And, the phrase does not simply "refer to all § 2254 applications filed second or successively in time." *Panetti v. Quarterman*, 551 U.S. 930, 940 (2007). As such, the Court is presented with a unique situation where it is not quite clear which Petition is considered the "second or successive." It may very well be that the Southern District of Indiana did not have jurisdiction to rule on the merits of Johnson-El's Petition because it was filed after the Petition in this case. *See* 28 U.S.C. § 2244(b)(1) (noting that a "claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed"). However, since Judge McKinney has already decided the merits of Johnson-El's Petition, it may very well be that this Court should defer addressing the Petition filed here. *See id.* § 2244(a) (noting that a court need not entertain a habeas petition "if it appears that the legality of such detention has been determined by a judge . . .."). Regardless, even if this Court can adjudicate the Petition filed in this case, it arrives at the same conclusion as Judge McKinney: Johnson-El is not entitled to habeas relief.

**A.      The Habeas Petition Is Untimely.**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), habeas petitions are subject to a strict one-year statute of limitations, set forth as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

5

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d).

Here, Johnson-El's conviction became final on February 9, 2007, when the time to seek transfer to the Indiana Supreme Court expired. *Griffith v. Kentucky*, 479 U.S. 314, 321 (1987); *Powell v. Davis*, 415 F.3d 722, 726 (7th Cir. 2005). Therefore, he had until February 11, 2008,[1] to file a writ of habeas corpus or properly file a collateral attack in state court to toll the limitations period. The Respondent argues that because the next pleading Johnson-El filed was a Petition for post-conviction relief on January 28, 2009, the one-year statute of limitations has lapsed under § 2244(d)(1)(A).

In his Petition, however, Johnson-El claims his Petition is timely because of "newly discovered evidence" that was not introduced during his 2006 trial. (Pet. 8, ECF No. 1.) He asserts that an affidavit provided by the victim's cousin stating that the victim told him she was not raped by Johnson-El constitutes newly discovered evidence. Though the affidavit constitutes "new evidence" to the extent it was not introduced at trial, it does not constitute newly discovered evidence sufficient to enlarge the one-year period. To qualify as a claim based on newly discovered evidence, the claim must be presented within one year from "the date on which

---

[1] February 9, 2008, fell on a Saturday.

the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The Seventh Circuit has made clear that the time runs from the date when the evidence could have been discovered through diligent inquiry, not when it was actually discovered or when its significance was realized. *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2001). Johnson-El has not provided a copy of the affidavit and it is not clear when the affidavit was signed. Thus, it is unclear when he discovered this information. Moreover, Johnson-El does not indicate when he "could have discovered" this information "through diligent inquiry." Indeed, Johnson-El has wholly failed to explain or establish that he exercised due diligence in procuring this affidavit and that he filed his Petition for state post-conviction within one year from the time he could have discovered the information in the affidavit. Because of that, § 2244(d)(1)(D) is inapplicable to this case.

Johnson-El does not specifically argue that he is entitled to equitable tolling, but that is the doctrine of equity that is applicable to excusing an untimely habeas corpus petition. Because Johnson-El's cause and prejudice arguments are sufficiently related, the Court will examine whether he is entitled to equitable tolling. "[A] petitioner is entitled to equitable tolling if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 632 (2010) (quotation marks and citation omitted). "Equitable tolling is an extraordinary remedy and so is rarely granted." *Obriecht v. Foster*, 727 F.3d 744, 747–48 (7th Cir. 2013) (quotation marks and citation omitted). "Petitioners bear the burden of proving that they qualify for equitable tolling." *Taylor v. Michael*, 724 F.3d 806, 810 (7th Cir. 2013). Johnson-El filed his amended post-conviction Petition based on the new evidence allegedly discovered nearly five years after his conviction. (Pet. 4.) Again, because Johnson-El has failed to show that he has

been pursuing his rights diligently and that some extraordinary circumstance stood in his way, equitable tolling is not available. *See id.* at 811.

Johnson-El also seems to argue that failure to consider the merits of his claims would result in a fundamental miscarriage of justice. This, too, is an equitable doctrine which can excuse procedural default. *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013). In that context, the petitioner must prove that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Therefore these arguments will be analyzed as actual innocence claims which could excuse the filing of an untimely petition. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931–33 (2013). This, however, is a very difficult standard to meet. *Schlup*, 513 U.S. at 324.

> To invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing.

*McQuiggin*, 133 S. Ct. at 1935 (quotation marks and citation omitted). A petitioner who asserts actual innocence "must *demonstrate* innocence; the burden is his, not the state's . . . ." *Buie v. McAdory*, 341 F.3d 623, 626–27 (7th Cir. 2003) (emphasis in original). Furthermore, actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 615 (1998). To support a claim of actual innocence, the petitioner must come forward with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," and must show that "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537

(2006). Because of the difficulty of meeting this standard, such claims are "rarely successful." *Schlup*, 513 U.S. at 324.

Here, the only new evidence that Johnson-El argues was not presented at trial is the affidavit from the victim's cousin stating that the victim told him she was not raped by Johnson-El. Notably, the affiant was not present on the night of the rape, and the affidavit offers only inadmissible hearsay evidence, in the form of a third-party statement (purportedly made by the victim) presented for the truth of the matter asserted. This evidence does not come close to meeting the standard. Therefore, Johnson-El has not demonstrated actual innocence.

Accordingly, the one-year period of limitation began on February 9, 2007, and expired a year later on February 11, 2008. Johnson-El filed a post-conviction relief Petition in 2009, but by then the habeas corpus deadline had already expired. Though he filed an amended Petition in 2011, that Petition did not "restart" the federal clock, nor did it "open a new window for federal collateral review." *De Jesus v. Acevedo*, 567 F.3d 941, 942 (7th Cir. 2009). Because the Petition is untimely, it must be denied.

Nevertheless, timeliness aside, the claims raised in Johnson-El's Petition still fail.

**B.    Johnson-El's First Claim Is Non-Cognizable.**

Johnson-El's first claim is that the post-conviction court improperly dismissed his Petition under Indiana Trial Rule 41(E). However, this claim is not cognizable on federal habeas review. Claims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Cress v. Palmer*, 484

F.3d 844, 853 (6th Cir. 2007) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). To the extent he is claiming an error in the application of Indiana Trial Rule 41(E), a state law, this does not provide a cognizable basis for granting federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (federal habeas relief is only available for a violation of the U.S. Constitution or other federal laws).

**C.    Johnson-El's Second Claim Is Procedurally Defaulted.**

Johnson-El's second claim is that there is newly discovered evidence that entitles him to a new trial. The Respondent argues that Johnson-El's claim is procedurally defaulted.

Before considering the merits of a claim, the Court must ensure that a petitioner exhausted all available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). Interests of comity require that the state courts be given the first opportunity to address and correct violations of their prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claim in one complete round of state review, including with the state court of last resort. *Baldwin v. Reese*, 541 U.S. 27, 30–31 (2004); *Boerckel*, 526 U.S. at 845. The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a claim when: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state law procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would now find the claim procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

Because Johnson-El's state post-conviction Petition was dismissed due to failure to adhere to the Indiana Trial Rules, his newly discovered evidence claim is barred by procedural

default upon an independent and adequate state law ground. On appeal from the denial of post-conviction relief, the Indiana Court of Appeals stated:

> Next, Johnson-El challenges the post-conviction court's dismissal of his petition for post-conviction relief based on Trial Rule 41(E). He argues that the post-conviction court did not issue an order to show cause prior to dismissing his petition as required by Trial Rule 41(E). He also contends that the post-conviction court abused its discretion in dismissing his petition because it raised material issues of fact.
>
> Trial Rule 41(E) provides that:
>
>> Whenever there has been a failure to comply with these rules or when no action has been taken in a civil case for a period of sixty (60) days, the court, on motion of a party or on its own motion shall order a hearing for the purpose of dismissing such case. The court shall enter an order of dismissal at plaintiff's costs if the plaintiff shall not show cause at or before such hearing.
>
> In *Holliness v. State,* 496 N.E.2d 1281, 1282 (Ind. 1986), our Supreme Court held that "dismissal after the Public Defender has made an appearance on behalf of the *pro se* petitioner and before an amended petition has been filed, can be made only after an order to show cause why the petition should be dismissed pursuant to T.R. 41(E)." This Court has explained that this requirement derives from the State Public Defender's Office's responsibilities to "interview the indigent client, to read his appellate record, to interview his trial and appellate attorneys, and to investigate the legal and factual matters necessary to a decision whether to amend the indigent's *pro se* petition for post-conviction relief." *Stoner v. State,* 506 N.E.2d 837, 838 (Ind. Ct. App. 1987). Indiana courts want public defenders to have "ample time to investigate post-conviction relief claims so that they may amend petitions, if necessary, to include all possible theories in a single petition, thereby rendering future petitions unnecessary." *Joseph v. State,* 603 N.E.2d 873, 876 (Ind. Ct. App. 1992).
>
> Here, however, we do not have such concerns because Johnson-El was not represented by a public defender that needed time to review his case and amend his *pro se* petition at the time when the post-conviction court dismissed his petition. The public defender representing Johnson-El filed a Notice of Present Inability to Investigate and Amend Petitioner's *Pro Se* Petition for Post–Conviction Relief. Then, after investigating Johnson-El's case, the public defender withdrew his appearance on October 27, 2011. A year and a half passed without Johnson-El prosecuting his petition before the post-conviction court scheduled a hearing for dismissal on January 16, 2013. The Chronological Case Summary ("CCS") does not clarify whether Johnson-El received notice that the court had scheduled a hearing on January 16. However, on February 25, 2013, the

> post-conviction court continued the hearing, and the CCS indicates that he received notice at this point. Subsequently, Johnson-El did not make any attempts to show cause before the post-conviction court held the hearing on March 19, 2013, even though he had received notice of the hearing.
>
> Significantly, we note that the plain language of Trial Rule 41(E) does not place the burden on the post-conviction court to enter an order to show cause. Instead, the language provides that the court must order a hearing, and the plaintiff must show cause. Our precedent has established that a post-conviction court must issue an order to show cause where a public defender has made an appearance on behalf of a *pro se* petitioner and has not had an opportunity to file an amended petition. However, those circumstances are not on point here, and we will not extend that precedent to the circumstances before us absent explicit support for that conclusion in the language of Trial Rule 41(E). *See Holliness,* 496 N.E.2d at 1282.
>
> Moreover, we note that a year and a half lapsed between the public defender's withdrawal from Johnson-El's case and the post-conviction court's notice that it had scheduled the hearing to dismiss. During this time, Johnson-El did not act on his petition or indicate in any respect that he intended to amend his petition. Based on these factors, we conclude that the post-conviction court did not abuse its discretion in dismissing Johnson-El's petition. In addition, because we conclude that the post-conviction court properly dismissed the petition, we need not address Johnson-El's second argument regarding the merits of his petition.

*Johnson-El v. State*, No. 09A02-1302-PC-720, slip op. at *6-8 (Ind. Ct. App. Aug. 29, 2014).

The dismissal of Johnson-El's claim on state procedural grounds serves as an independent and adequate state law ground barring this Court's review here. *Coleman*, 501 U.S. at 729–32.

In addition, it must be noted that on appellate review Johnson-El merely challenged the Rule 41(E) dismissal of his post-conviction Petition. He never independently raised his newly discovered evidence claim on appeal as he does now on federal review. Because he never raised the newly discovered evidence claim independently before the state courts, he failed to fully and

fairly present the claim to Indiana's highest court. This is a second reason that his claim is procedurally defaulted.[2] *Chambers*, 264 F.3d at 737–38.

D.     **The Newly Discovered Evidence Claim Is Without Merit**

As a final matter, it must be pointed out that Johnson-El's freestanding claim of newly discovered evidence—even if timely presented and not procedurally defaulted—would not entitle him to a new trial. Johnson-El's Petition is governed by the provisions of the AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Court may grant an application for habeas relief only if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[2]     A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). Johnson-El did not file a traverse or assert any basis for this Court to excuse his procedural default.

A habeas petitioner may also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim on the merits would result in a fundamental miscarriage of justice. *Bell*, 547 U.S. at 536 (2006); *Coleman*, 501 U.S. at 750. Under this narrow exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup*, 513 U.S. at 324. A petitioner who asserts actual innocence "must *demonstrate* innocence; the burden is his, not the state's . . . ." *Buie*, 341 F.3d at 626–27. Johnson-El does not demonstrate that any such fundamental miscarriage of justice would occur.

The Supreme Court has stated that "the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." *Herrera v. Collins*, 506 U.S. 390, 400 (1993) (quotation and citation omitted). Thus, it is not enough for Johnson-El to show that the trial court committed error in denying his motion for new trial. To state a ground for federal habeas relief, claims based on newly discovered evidence "must relate to a constitutional violation independent of any claim of innocence." *Johnson v. Bett*, 349 F.3d 1030, 1038 (7th Cir. 2003) (citing *Herrera*, 506 U.S. at 400). To illustrate, the Seventh Circuit has said that "where the newly discovered evidence consists of witness recantations of trial testimony or confessions by others of the crime, most courts decline to consider it in the absence of any showing that the prosecution knowingly proffered false testimony or failed to disclose exculpatory evidence, or that petitioner's counsel was ineffective." *Id.* (citation and quotations omitted). Here, Johnson-El does not assert any underlying constitutional violation. He simply contends that if the new evidence was presented, the case may have been decided differently. That is not sufficient to warrant relief here.

## CERTIFICATE OF APPEALABILITY

Finally, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the Court must consider whether to grant a certificate of appealability. When the Court dismisses a petition on procedural grounds, the determination of whether a certificate of appealability should issue has two components. *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). First, the petitioner must show that reasonable jurists would find it debatable whether the Court was correct in its procedural ruling. *Id.* at 484. If the petitioner meets that requirement, then he must show that reasonable jurists would find it debatable whether the petition states a valid claim for the denial

of a constitutional right. *Id.* As previously explained, this Petition is untimely and the claims are without merit. Johnson-El has not presented a colorable argument for how it could be either considered timely or how the untimeliness could be equitably excused. Moreover, it is not debatable that either claim in his Petition states a valid claim for the denial of a constitutional right. Because there is no basis for finding that reasonable jurists would debate the correctness of these rulings or find a reason to encourage him to proceed further, a certificate of appealability must be denied.

## IV. CONCLUSION

For these reasons, the Court **DENIES** habeas corpus relief and **DENIES** a certificate of appealability.

SO ORDERED on March 15, 2017.

s/ Theresa Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT